UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAIF SAMEER YAFAI, *et al.*,                          Case No. 23-13199

      Plaintiffs,                                      F. Kay Behm
v.                                                     United States District Judge

U.S. DEPARTMENT OF STATE, *et al.*,

      Defendants.
_____ /

## OPINION AND ORDER GRANTING DEFENDANTS'
## MOTION TO DISMISS COMPLAINT (ECF No. 6)

**I.      PROCEDURAL HISTORY**

Plaintiffs bring this action alleging that the U.S. Department of State

unreasonably delayed in acting on Plaintiff Diana Khaled Abdulghani Saleh's

immigrant visa application.  (ECF No 1).  Defendants have filed a motion to dismiss

the Complaint.  (ECF No. 6).  This matter is fully briefed.  (ECF Nos. 7, 8).  The court

held a hearing via videoconference on May 29, 2024.  For the reasons set forth

below, the court **GRANTS** Defendants' motion to dismiss the Complaint.

**II.     FACTUAL BACKGROUND**

In this case, Plaintiff Yafai, a United States citizen, sought an immigrant visa

on behalf of his spouse, Plaintiff Saleh, a citizen and resident of Yemen.  (ECF No.

1, ¶¶ 1, 10, 11).  Yafai filed an I-130 petition with USCIS on February 26, 2021,

which was approved in October 2022.  *Id*.  USCIS forwarded the application to the

United States Embassy in Djibouti for further processing and an immigrant visa

interview.  (ECF No. 1, ¶ 1).  Saleh appeared for her visa interview at the United

States Embassy in Djibouti on May 16, 2023.  *Id*. at ¶ 2.  At the conclusion of the

interview, the consular officer refused Saleh's visa application under 8 U.S.C.

§ 1201(g).  (ECF No. 1-4).  According to Defendants, the State Department's

public-facing website shows that the visa remains refused:



Visa Status Check, U.S. Dep't of State,

https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited Feb. 16, 2024).

Plaintiffs maintain that Defendants determined that Saleh's application

required administrative processing before it could be determined whether she

was eligible for a visa.  (ECF No. 1-4) (Box checked for "Your application requires

administrative processing before we are able to determine whether you are

2

eligible for a visa.  The visa unit will contact you when the case is ready.").  This

same form directed Saleh to submit the form DS-5535.  *Id*.  According to the

correspondence attached the Complaint, Saleh completed the DS-5535 on the

same day of her interview.  (ECF No. 1-8, PageID.34).  Plaintiffs say that they have

attempted to contact the U.S. Embassy in Djibouti several times to determine the

state of the case and have received no response and nothing has happened in this

matter since the May 16, 2023 interview and submission of the DS-5535.  (ECF No.

1-8).  Accordingly, this suit was filed.

III.   **ANALYSIS**

    A.   <u>Standards of Review</u>

        *1.   Rule 12(b)(6)*

In deciding a motion to dismiss under Rule 12(b)(6), the court "must

construe the complaint in the light most favorable to the [nonmoving party] ...

[and] accept all well-pled factual allegations as true*." League of United Latin Am.*

*Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush*

*Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must provide "'a

short and plain statement of the claim showing that the pleader is entitled to

relief,' in order to 'give the defendant fair notice of what the ... claim is and the

grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted).  A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678.  However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679.  The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527.  Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

4

      2.     *Rule 12(b)(1)*

A motion brought under Federal Rule of Civil Procedure 12(b)(1) alleges that the court does not have subject matter jurisdiction over the claims as presented.  Fed. R. Civ. P. 12(b)(1).  Allegations that a plaintiff lacks standing can be brought as a motion to dismiss for lack of subject matter jurisdiction.  *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) ("We review de novo a district court's dismissal of a case for lack of standing – lack of subject matter jurisdiction – under Fed. R. Civ. P. 12(b)(1).").  Motions brought under Rule 12(b)(1) fall into two categories: facial attacks and factual attacks.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack is a "challenge to the sufficiency of the pleading itself" whereas a factual attack "is a challenge to the factual existence of subject matter jurisdiction."  *Id.*  In this case, Defendants bring a facial attack challenging the sufficiency of the Plaintiffs' allegations that they suffered a concrete injury in fact.  *Id.*  Because this is a facial attack, the court must "accept[] the material allegations in the complaint as true and construe[] them in the light most favorable to the nonmoving party."  *Id.*

    B.   <u>Claim Under APA/Mandamus</u>

The APA commands that "within a reasonable time, each agency shall proceed to conclude a matter presented to it" and permits a reviewing court to

"compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. §§ 555(b), 706(1).  In Count I of the Complaint, Plaintiffs seek relief under the Mandamus Act, 28 U.S.C. § 1361, claiming that Defendants willfully and unreasonably delayed and refused to perform their non-discretionary duty to adjudicate Plaintiffs' I-130 petition under the INA and the APA.  In Count II of the Complaint, Plaintiffs seek relief under the APA, similarly claiming that Defendants failed to render timely action on Plaintiffs' I-130 petition by failing to complete the administrative processing, thereby violating 5 U.S.C. § 706(1), which allows the court to compel an agency to perform an "action unlawfully withheld or unreasonably delayed."  "When a complaint seeks identical relief under the APA and the Mandamus Act, courts routinely elect to analyze [the] APA claim only." *Taherian v. Blinken*, 2024 WL 1652625 (C.D. Cal. Jan. 16, 2024) (quoting *Akbar v. Blinken*, 2023 WL 8722119, at *3 (S.D. Cal. Dec. 18, 2023) (citing *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022)); *see also Telukunta v. Mayorkas*, 2021 WL 2434128, at *4 (E.D. Mich. June 15, 2021) (dismissing mandamus petition for lack of jurisdiction where plaintiff "has an adequate remedy under the APA if she could establish an unreasonable delay, but she cannot.").  The relief sought under these two counts is the same, as counsel for Plaintiffs conceded at oral argument.

Accordingly, the court will proceed to address the APA claim only and the mandamus claim (Count I) is dismissed.

To be entitled to relief under the APA, a plaintiff must show either that the agency unlawfully withheld action it was required to take, such as when an agency fails to meet a congressionally set deadline, or that the agency unreasonably delayed taking "a discrete agency action that it is required to take," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  Defendants argue that the State Department has refused Saleh's visa application and has no duty to re-adjudicate it.  Defendants point to Exhibit 3 attached to Plaintiffs' complaint, which indicates the State Department refused Saleh's visa application in May 2023.  (ECF No. 1-4, PageID.15).[1]  Defendants maintain that the consular officer adhered to the regulation requiring that the officer "either issue or refuse the visa" after submission of the application, *see* 22 C.F.R. § 42.81(a), and accordingly, Plaintiffs' complaint does not identify a mandatory legal duty that a consular

---

[1] Defendants also rely on the status of Saleh's visa application indicated on the State Department's website as "refused."  Notably, beginning in March 2020, the State Department changed its website to display the status of applications undergoing further administrative processing as "refused."  *Sawahreh v. United States Dep't of State,* 630 F.Supp.3d 155 (D.D.C. 2022) (citing U.S. Dep't of State, Visas: CEAC Case Status Change (March 5, 2020), https://bit.ly/3DkqCWP (Status Change Memo)).  As noted by the *Sawahreh* court and the State Department itself, this reporting change in such circumstances reflects "no change in such applicants' actual cases." *Id*.

officer has failed to take.  In response, Plaintiffs argue that the decision was not a final decision because a notice under § 221(g) is not a final decision.

While Defendants insist that a final decision was issued and thus, Plaintiffs' claim is not subject to review under the APA, Plaintiffs point out that that Defendants determined that Saleh's application required further administrative processing before it could be determined whether she was eligible for a visa, and directed her to file a form DS-5535, which she did.  (ECF Nos. 1-4; 1-8).  Several courts have held that where a petition remains in the administrative processing state – as this case does – the court has subject matter jurisdiction under the APA because the plaintiff does not seek review of any decision, but instead seeks review of the government's failure to decide.  *Sawahreh v. United States Department of State*, 630 F.Supp.3d 155 (D.D.C. 2022) (citing *Milligan v. Pompeo (Milligan I)*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 93 (D.D.C. 2020) (collecting cases)).  Indeed, as explained in *Sawahreh*, a consular officer need only make an initial, rather than final, determination about an applicant's visa eligibility.  In other words, "under Section 221(g) of the Immigration and Nationality Act (INA), an officer can temporarily refuse to issue a visa in order to allow for further administrative processing of an

applicant's case if the officer needs more information or time to determine eligibility."  *Id.* (citing 8 U.S.C. § 1201(g)).

The case of *Moghaddam v. Pompeo*, 424 F.Supp.3d 104 (D.D.C. 2020) is instructive.  In *Moghaddam*, plaintiff Nahid Sharei filed a I-130 petition on behalf of his wife, plaintiff Sharei.  *Id.* at 110.  The petition was approved and plaintiff Sharei was assigned a consular case number and interviewed by the Consular Section of the U.S. Embassy in Ankara.  *Id.*  Her application was refused, but she was referred for waiver eligibility review.  As instructed, she then filled out DS-5535.  *Id.*  After her waiver application was pending for 14 months with no decision issued, she filed a complaint in district court seeking relief under the APA and Mandamus Act to force the State Department to make a decision on her waiver application.  *Id.*  In rejecting the government's argument that the decision at issue was not reviewable under the consular non-reviewability doctrine,[2] the

---

[2] The Sixth Circuit explains this doctrine as follows:

The doctrine of consular non-reviewability stems from Congress's plenary power over immigration, its authority to set the terms upon which a person without status in the United States may procure a visa and enter the country, and its attendant prerogative to delegate the power to welcome, exclude, or expel individuals without lawful status to the executive branch.  *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977).  "For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'"  *Trump v. Hawaii*, —— U.S. ——, 138 S. Ct. 2392, 2418, (2018) (quoting *Fiallo*, 430 U.S. at 792).  These principles undergird the consular

court held that where a suit challenges *inaction*, as opposed to a decision taken within the consul's discretion, there is jurisdiction.  *Id*. at 114 (citing *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997)).  More specifically, in *Moghaddam*, the court explained that the plaintiffs were not challenging the initial denial of the visa application; instead, they challenged the waiver application that remained pending and undecided.  *Id.*  This alleged failure to act was reviewable by the courts.  *Id*.  Other courts have reached similar conclusions, finding that cases in "administrative process" are not final decisions and are, thus, subject to review.  *See Vulupala v. Barr*, 438 F.Supp.3d 93, 98 (D.D.C. 2020) ("As other courts have found, the focus should be on what is actually happening; even if the State Department chooses to characterize a section 221(g) notification as a 'refusal,' an interim decision is not sufficiently final to warrant the application of the doctrine."); *Saleh v. Tillerson*, 293 F. Supp. 3d 419, 431 (S.D.N.Y. 2018) ("[A] visa that is in 'administrative processing' cannot be said to have received final approval."); *Sharifi v. Blinken*, 2024 WL 1798185, at *3 (E.D.N.Y. Apr. 25, 2024) (Where visa application referred for further administrative processing under

---

non-reviewability doctrine: There is typically no judicial review available to challenge visa-eligibility decisions made by consular officers abroad.  *See Matushkina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017).

*Amiri v. Sec'y, Dep't of Homeland Sec.*, 818 F. App'x 523, 526–27 (6th Cir. 2020).

Section 221(g), consular officials have taken no final action; and though nominally "refused," the visa application remains under consideration in a state of administrative limbo that cannot fairly be described as a final determination); *Ahmed v. Bitter*, 2024 WL 22763, at *5 (E.D.N.Y. Jan. 2, 2024) (Cases in administrative processing have not been finally refused, and are therefore subject to judicial review for undue delay.).  Accordingly, Plaintiffs have correctly characterized the decision at issue as non-final and thus, Defendants' alleged failure to timely process the application for visa is subject to judicial review under the APA.

At oral argument, Defendants' counsel pointed to recent contrary authority from the District Court for the District of Columbia, which rejected the above decisions as "flawed" because they rest on the assumption that courts have jurisdiction to review § 221(g) refusals for unreasonable delay because they are not "final."  *Yaghoubnezhad v. Stufft*, 2024 WL 2077551, at *9 (D.D.C. May 9, 2024).  Instead, the court found that once a consular officer either issues or refuses a visa, and provides a legal basis for doing so, nothing in the INA or its regulations require consular officers to do anything more.  *Id*.  Thus, the court concluded that, for the purpose of § 706(1) review, consular officers' § 221(g) refusals are "final" and thus, not subject to review.  *Id*.  Even if this decision is

correct, it does not change the ultimate result here, because the court finds no

unreasonable delay, as discussed in detail below.

      C.    <u>Unreasonable Agency Delay</u>

      Next, Defendants argue that Plaintiffs fail to allege sufficient facts

establishing a claim for unreasonable agency delay.  "A claim of unreasonable

delay is necessarily fact dependent and thus sits uncomfortably at the motion to

dismiss stage and should not typically be resolved at that stage."  *Barrios Garcia v.*

*U.S. Dep't of Homeland Sec*., 25 F.4th 430, 451 (6th Cir. 2022) (quoting Gonzalez v.

Cuccinelli, 985 F.3d 357, 375 (4th Cir. 2021)); *see also Mashpee Wampanoag*

*Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of

a claim of unreasonable delay is ordinarily a complicated and nuanced task

requiring consideration of the particular facts and circumstances before the

court.").  To evaluate the reasonableness of agency delay, the court examines six

factors set out in *Telecommunications Research & Action Center v. FCC (TRAC*),

750 F.2d 70 (D.C. Cir. 1984); *see also Barrios Garcia*, 25 F.4th at 451:

> (1) the time agencies take to make decisions must be
> governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other
> indication of the speed with which it expects the agency
> to proceed in the enabling statute, that statutory
> scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id*. at 80 (internal quotations, citations, and emphasis omitted).  These six factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'"  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80).  "Each case must be analyzed according to its own unique circumstances," as each "will present its own slightly different set of factors to consider."  *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Board*, 750 F.2d 81, 86 (D.C. Cir. 1984).  Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part ... upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Mashpee*, 336 F.3d at 1100, 1102.

13

Some courts hold that it is not appropriate to address the *TRAC* factors at the motion to dismiss stage because undergoing such a fact-specific inquiry at this stage would be premature. *Moghaddam*, 424 F.Supp.3d at 117 (citing *M.J.L. v. McAleenan*, 420 F.Supp.3d 588, 597–98, 2019 WL 6039971, at *6 (W.D. Tex. Nov. 13, 2019) (finding that "at the motion to dismiss stage and before discovery has been completed," it would be "premature to address these [*TRAC*] factors"); *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 54 (D.D.C. 2008) ("While the court has jurisdiction over USCIS, the determination of whether an agency's delay is unreasonable is a fact specific inquiry that is premature at this stage of the proceedings."); *Mashpee*, 336 F.3d at 1100 ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court.")). Yet, other decisions have concluded the opposite. *See e.g.*, *Mottahedan v.* Oudkirk, 2024 WL 124750, *3 (D.D.C. Jan. 11, 2024) ("[T]he majority of authority demonstrates that it is appropriate to apply the TRAC factors at the motion to dismiss stage.") (collecting cases). Notably, however, in undertaking this analysis at the motion to dismiss stage, the court is "not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable

administrative delay." *Id*. (quoting *Ghadami v. U.S. Dep't of Homeland Sec*., 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020)).  And the Sixth Circuit applied the *TRAC* factors in evaluating the motion to dismiss in *Barrios Garcia*.  Thus, it appears appropriate to do so here.

Defendants argue the first, second, and fourth factors weigh in their favor; and the third, fifth, and sixth factors are neutral.  Accordingly, Defendants urge the court to conclude that the Complaint fails to allege sufficient facts to support a claim of unreasonable delay and the APA claim should, therefore, be dismissed. In response, Plaintiffs do not directly address the six *TRAC* factors, but they do argue that Saleh is currently living in Yemen, which is at war and Yafai works for the United State Department of Defense, which puts his spouse at great risk. Notably, however, there are no allegations in the Complaint regarding the war in Yemen or the potential risk to Saleh based on Yafai's job at the Department of Defense.  Saleh also points out that she had received no response to her multiple status inquiries.

The court finds that Plaintiffs have not stated a claim for unreasonable delay.  Notably, Plaintiffs failed to provide any substantive analysis of the *TRAC* factors and thus, any dispute on the merits has been waived.  *Notredan, L.L.C. v. Old Republic Exchange Facilitator Co*., 531 F. App'x 567, 569 (6th Cir. July 29,

2013) (failure to respond to an argument that a claim is subject to dismissal "amounts to a forfeiture of [such] claim").  Further, the present Complaint is distinguishable from the complaint found to state a claim for unreasonable delay in *Barrios Garcia*.  There, the court found that the third and fifth factors (human health and welfare and prejudice caused by delay) weighed in favor of the plaintiffs where they alleged that they could not obtain social-security numbers or identification cards; they could not garner healthcare, car insurance, or lawful employment; they could not acquire deferred action or permanent status; they risk removal from the United States; and they could not lawfully travel to and from the United States, so they could not reunite with their family that lives abroad.  25 F.4th at 452.  Based on these facts, combined with the five years the applicants had been waiting for a decision about whether they would be placed on the U-visa waitlist, the court found that the plaintiffs had sufficiently stated an unreasonable delay claim.  *Id*.

While it has been three years since Plaintiffs first applied for her visa, it has only been one year since she submitted her DS-5535 and her application has been in administrative processing status.  As to factors one and two, as explained in *Giliana v. Blinken*, 596 F. Supp. 3d 13, 21 (D.D.C. 2022), absent another applicable rule of reason, courts "typically turn to case law as a guide," *Sarlak v. Pompeo*,

2020 WL 3082018, at *6 (D.D.C. June 10, 2020), and, in other contexts, have
"generally found that immigration delays in excess of five, six, seven years are
unreasonable, while those between three to five years are often not
unreasonable." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020)
(citation omitted); *see also Mirbaha v. Pompeo*, 513 F. Supp. 3d 179, 185 (D.D.C.
2021) (same for K-1 fiancée visas). Thus, the delay here falls within the scope of a
reasonable, rather than an unreasonable delay and these factors favor the
government. The fourth factor also favors the government, as "a judicial order
putting" a plaintiff's application "at the head of the queue" would "move[ ] all
others back one space and produce[ ] no net gain." *See In re Barr Labs., Inc.*, 930
F.2d 72, 75 (D.C. Cir. 1991); *see also Mashpee*, 336 F.3d at 1100 (reiterating "the
importance of 'competing priorities,'" noting the Circuit has "refused to grant
relief, even though all the other [*TRAC*] factors" favored plaintiff). The sixth factor
appears to favor the government as there is no allegation of bad faith in the
Complaint.

Only the third and fifth *TRAC* factors plausibly favor Plaintiffs. Several
courts have found that these factors weigh in favor of plaintiffs when delays force
them to postpone their lives together as married couples. *Giliana*, 596 F.Supp.3d
at 22; *Didban*, 435 F.Supp.3d at 177; *Bagherian*, 442 F.Supp.3d at 95. Accordingly,

while these factors weigh in Plaintiffs' favor, like the court in *Giliana*, this court too finds that "these factors do not carry the day."  596 F.Supp.3d at 22.  For these reasons, the court finds that Plaintiffs have not plausibly stated a claim for unreasonable delay and the APA claim (Count II) must be dismissed.

D.   Claim for Declaratory Relief

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction …, any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  But Section 2201 does not create an independent cause of action.  *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips Petroleum Co*., 339 U.S. 667, 671 (1950)).  Accordingly, a federal court "must 'have jurisdiction already' under some other federal statute" before a plaintiff can "invok[e] the Act."  *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007) (quoting *Heydon v. MediaOne of S.E. Mich., Inc*., 327 F.3d 466, 470 (6th Cir. 2003)).  Put another way, "[t]he Declaratory Judgment Act is procedural in nature and 'does not create an independent cause of action' that can be invoked absent some showing of an articulated legal wrong."  *Doe v. Univ. of Dayton*, 766 F. App'x 275, 291 (6th Cir. 2019) (quoting *Davis*, 499 F.3d at 594).  Where, as here, the underlying claim fails,

there is nothing for the court to declare and this claim (Count III) must be dismissed.  *See EQMD, Inc. v. Farm Bureau Gen. Ins. Co. of Michigan*, 2021 WL 843145, at *8 (E.D. Mich. Mar. 5, 2021) (Where the plaintiff failed to state any federal cause of action, there is nothing for the court to declare under the Declaratory Judgment Act.).[3]

## IV.    CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendants' motion to dismiss the Complaint in its entirety.

**SO ORDERED**.

Date: May 31, 2024                          s/F. Kay Behm
                                            F. Kay Behm
                                            United States District Judge

---

[3] Plaintiffs also seek fees under the Equal Access to Justice Act (EAJA).  The EAJA "provides for an award of attorney fees to a party prevailing against the United States in a civil action when the position taken by the Government is not substantially justified and no special circumstances exist warranting a denial of fees."  *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 445 (6th Cir. 2009) (citing 28 U.S.C. § 2412(d)(1)(A)).  Here, Plaintiffs are not prevailing parties and thus, are not entitled to fees under EAJA.  Accordingly, their claim for attorney fees under the Equal Access to Justice Act (Count IV) must also be dismissed.